**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| Sozo Illinois, Inc., f/k/a Sozo Health, Inc. | |
| Plaintiff, | |
| v. | Case No. 21-cv-03809 |
| Jay Robert Pritzker, Governor of the State of Illinois, in his official capacity; and | |
| Mario Treto, Jr., in his official capacity as Acting Secretary of the Illinois Department of Financial and Professional Regulation | |
| Defendants. | |

**MEMORANDUM IN SUPPORT OF MOTION**
**FOR A TEMPORARY RESTRAINING ORDER AND A PRELIMINARY INJUNCTION**

Alan Nicgorski (State Bar No. 6243574)
Joseph Jacobi (State Bar No. 6273967)
Sarah Troupis Ferguson (pro hac vice pending)
150 S. Wacker Dr. 24th Floor
Chicago, IL 60606
Phone: 312.265.2253
Email: anicgorski@hansenreynolds.com
jjacobi@hansenreynolds.com
sferguson@hansenreynolds.com

*Attorneys for Plaintiff Sozo Illinois, Inc.*

**Table of Contents**

FACTUAL BACKGROUND................................................................................................2

    The 2019 Act and the Initial Application Process ................................................2

    Sozo Participates in the IL Application Process In Reliance on 2019 Act and IDFPR Guidance ...3

The IDFPR Announces Results of Initial Application Process ..............................5

The Amended Act .................................................................................................6

ARGUMENT ..............................................................................................................6

    I.    Sozo Is Likely to Succeed on its Constitutional Claims. ...........................7

        A.    Sozo is Likely to Succeed on Its Commerce Clause Claim...............7

        B.    Sozo Is Likely to Succeed on its Fourteenth Amendment Due Process Claim...................11

        C.    Sozo Is Likely to Succeed on Its Equal Protection Claim. .....................15

        D.    Sozo is Likely to Succeed on Its State Constitution Claims. ................16

    II.    Plaintiff Has No Adequate Remedy at Law and Will Suffer Irreparable Harm if a Preliminary Injunction is Denied. ................17

    III.    The Harm Suffered by Sozo if the Preliminary Injunction is Denied Will Outweigh Any Potential Harm to Defendants. ................19

    IV.    A Preliminary Injunction Will Serve the Public Interest. ..........................20

CONCLUSION ..........................................................................................................21

### Table of Authorities

**Cases**            **Page**

*Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992)........................................7

*Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012)...............................................23

*Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821 (7th Cir. 1998) .................................22

*Briscoe v. Kusperi,* 435 F. 2d 1046 (7th Cir. 1971)..........................................................................16

*Camps Newfoundland/Owatonna, Inc. v. Town of Harrison*, Me., 520 U.S. 564 (1997) ..................9

*Cassell v. Snyders,* 990 F.3d 539 (7th Cir. 2021) .......................................................................... 7, 23

*Cty. of Sacramento v. Lewis*, 523 U.S. 833 (1998); *Daniels v. Williams*, 474 U.S. 327 (1986) ......14

*Dietchweiler by Dietchweiler v. Lucas*, 827 F.3d 622 (7th Cir. 2016) ...............................................14

*Euclid v. Ambler Realty Co.,* 272 U.S. 365 (1926) ...........................................................................14

*Foster v. Ghosh*, 4 F. Supp. 3d 974 (N.D. Ill. 2013)........................................................................23

*Fulton Corp. v. Faulkner*, 516 U.S. 325 (1996) .................................................................................8

*Goss v. Lopez*, 419 U.S. 565..............................................................................................................15

*Hamlyn v. Rock Island Cty. Metro. Mass Transit Dist.*, 960 F. Supp. 160 (C.D. Ill. 1997)...........19

*Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569 (7th Cir. 2014).......................17

*Hughes v. Jones*, 40 F.Supp.3d 969 (N.D. Ill. 2014) .........................................................................16

*Hughes v. Oklahoma*, 441 U.S. 322 (1979)...................................................................................9, 11

*Indiana Fine Wine & Spirits LLC v. Cook*, 459 F. Supp. 3d 1157 (S.D. Ind. 2020) ....................19, 20, 22

*Jarabe v. Indus. Comm'n*, 172 Ill. 2d 345, 348, 666 N.E.2d 1(1996) ...............................................18

*Joelner v. Vill. of Wash. Park,* 378 F.3d 613 (7th Cir. 2004).....................................................22, 23

*Lineback v. Chauffeurs, Teamsters, & Helpers Loc. Union No. 414*, 513 F. Supp. 2d 988 (N.D. Ind. 2007) ....................................................................................................................................20

*Love v. City of Detroit*, Case No. 21-CV-10709, 2021 WL 2471476 (E.D. Mich. June 17, 2021) . 12, 21, 23

*Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111 (7th Cir. 1997) .......................20

*NPG, LLC v. City of Portland, Maine*, Case No. 2:20-cv-00208-NT, 2020 WL 4741913 (D. Me. Aug. 14, 2020).........................................................................................................................12, 21, 24

*Oregon Waste Sys., Inc. v. Dep't. of Envtl. Quality of State of Or.*, 511 U.S. 93 (1994) ............... 8, 11

*Orr v. Shicker*, 953 F.3d 490 (7th Cir. 2020) ..................................................................................19

*Planned Parenthood of In. v. Adams,* 937 F.3d 973 (7th Cir. 2019) ..................................................7

*Quick v. Illinois Dept. of Financial and Professional Regulation*, 468 F.Supp.3d 1001 (N.D. Ill. 2020)..........15

*Reno v. Flores*, 507 U.S. 292 (1993).................................................................................................14

*Smith on Behalf of Smith v. Severn*, 129 F.3d 419 n. 3 (7th Cir. 1997) ............................................18

*Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449 (2019) ............................... 8, 9

*Toigo v. Dept. of Health and Senior Services*, Case No. 2:20-cv-04243-NKL (W.D. Mo. June 21, 2021) ....................................................................................................................................passim

*Tully v. Okeson*, 977 F.3d 608 (7th Cir. 2020)....................................................................................7

*Village of Willowbrook v. Olech*, 528 U.S. 562 (2000) ................................................................ 17, 18

**Statutes**

Cannabis Regulation and Tax Act, 410 ILCS 705/1 ....................................................................passim

Ill. Const. art. 1, § 2 .........................................................................................................................16

U.S. Const. Amend. 14, § 1 ..............................................................................................................16

U.S. Const. art. I, § 8, cl. 3................................................................................................................7

**Rules**

Federal Rule of Civil Procedure 65(a)................................................................................................1

Federal Rule of Civil Procedure 65(b) .................................................................................................1

Plaintiff Sozo Illinois, Inc. f/k/a Sozo Health, Inc. ("Sozo"), by and through its attorneys, Hansen Reynolds LLC, and pursuant to Federal Rule of Civil Procedure 65(a) and (b) hereby submits this Memorandum in Support of Its Motion for a Temporary Restraining Order and a Preliminary Injunction.  Specifically, Sozo asks this Court to enjoin Defendant Jay Robert Pritzker, in his official capacity as Governor of Illinois, and Mario Treto, Jr., in his official capacity as Acting Secretary of the Illinois Department of Financial and Professional Regulation from enforcing certain licensure provisions of the amended Cannabis Regulation and Tax Act (which was just signed into law by Governor Pritzker one week ago).

Here, for the reasons set forth in detail below, the Court should grant Sozo's motion for a temporary restraining order followed by a preliminary injunction because the Act (as amended or the "2021 Act") discriminates in favor of in-state residents in violation of the Commerce Clause of the United States Constitution.  Also, by changing the rules for evaluating Sozo's applications *after* they were submitted, the 2021 Act violates Sozo's rights to due process and equal protection under the U.S. and Illinois Constitutions.  In the absence of injunctive relief, Sozo will be irreparably harmed by effectively having no chance at 130 of the first 185 new adult use dispensary licenses to be issued under the 2021 Act and facing tougher odds in the lottery for the remaining 55 due to the participation of applicants who benefited from the unconstitutional preference for Illinois ownership.  Finally, the public interest is served by preliminary injunctive relief that allows this Court to resolve these serious constitutional issues now, thereby allowing the public and participants in the cannabis industry to move forward with confidence that the system is fair and on sound constitutional footing.

### FACTUAL BACKGROUND[1]

The 2019 Act and the Initial Application Process

In 2019, Illinois passed the Cannabis Regulation and Tax Act, 410 ILCS 705/1 *et seq.* ("the 2019 Act"), which legalized recreational cannabis use in the state effective January 1, 2020. (Dkt. 1, Verified Complaint ¶¶ 18-19.)  Among other things, the 2019 Act established a process for awarding licenses to sell cannabis or cannabis-infused products to recreational purchasers.  As an initial matter, companies that had been previously licensed to sell cannabis for medical use were automatically given a license to sell to recreational purchasers.  These licenses are called "Early Approval Adult Use Dispensing Licenses."  (*Id.* ¶ 20.)  The 2019 Act also provided for additional licenses for the purposes of selling to recreational users.  These licenses are called "Conditional Adult Use Dispensing Organization Licenses."  (*Id.* ¶ 21.)  This case concerns the process for awarding these additional licenses, which we shall refer to as "New AU Licenses."

The 2019 Act provided for the issuance of 75 New AU Licenses by May 1, 2020; with an additional 110 New AU Licenses to be issued by December 21, 2021.  (*Id.* ¶ 23; *see also* 410 ILCS 705/15-25, 35.)   The 2019 Act set forth selection criteria for the New AU Licenses and provided for a point/scoring system associated with the selection criteria.  (Dkt. 1, ¶¶ 26-30; 410 ILCS 705/15-30.) The scoring system allowed for a total of 250 points to be awarded to a completed application, with an additional 2 points available in the event of a tie between applicants.  (*Id.*)  The 2019 Act delegated the responsibility for issuing licenses and administering the application process to the Illinois Department of Financial and Professional Responsibility ("IDFPR").  (Dkt. 1, ¶¶ 31-32.)

Among other criteria, the 2019 Act's scoring system awarded 5 points to applicants who were majority-owned by Illinois residents, and also provided 50 points to "Social Equity Applicants."  (Dkt.

---

[1] For a more robust discussion of the factual background, *see* Plaintiffs' Verified Complaint (Dkt. 1).

1, ¶ 30.)  The 2019 Act defined "Social Equity Applicant" as follows:

> (1) an applicant with at least 51% ownership and control by one or more individuals who have resided for at least 5 of the preceding 10 years in a Disproportionately Impacted Area;
>
> (2) an applicant with at least 51% ownership and control by one or more individuals who:  (i) have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this Act; or (ii) is a member of an impacted family;
>
> (3) for applicants with a minimum of 10 full-time employees, an applicant with at least 51% of current employees who:  (i) currently reside in a Disproportionately Impacted Area; or (ii) have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this Act or member of an impacted family.

410 ILCS 705/1-10; Dkt. 1-2, Ex. B at 61-62.  The first two methods for qualifying as a "Social Equity Applicant" are commonly referred to as the "ownership method" whereas the third method is referred to as the "employee method."

During the application process, the IDFPR clarified that the Social Equity Applicant points would be awarded on a binary basis—all or none.  (Dkt. 1, ¶¶ 42-46.)  Specifically, in response to the question: "Are different methods of social equity qualification scored differently or do all social equity applicants receive the full 50 points?" – the IDFPR stated:  "Applicants who demonstrate their status as a Social Equity Applicant will receive the full 50 points and applicants that do not demonstrate status as a Social Equity Applicant will receive 0 points ."  (*Id.* ¶ 45.)  The IDFPR never indicated that Social Equity Applicants would be treated differently based on their method of qualification.

<u>Sozo Participates in the IL Application Process In Reliance on 2019 Act and IDFPR Guidance</u>

Sozo Illinois is a wholly-owned subsidiary of Sozo Companies, Inc.  (*Id.* ¶ 13.)  Sozo Companies, through other subsidiaries, owns and operates extensive cannabis holdings in Michigan, from cultivation through retail in both the medical and adult use (recreational) markets there.  (*Id.*)  Sozo leadership teams includes entrepreneurs with experience founding and operating successful start-

up companies in Illinois as well as individuals with deep experience in the cannabis space, dating back to the earliest day of the industry in Colorado. (*Id.*) The Sozo Companies formed Sozo Illinois in 2019 for the purpose of seeking licensure in Illinois.

Sozo structured its business in reliance on the criteria for licensure in the 2019 Act and the corresponding guidance from the IDFPR. (*Id.* ¶ 47.) To qualify as a Social Equity Applicant, Sozo hired 10 full-time employees who resided in a "Disproportionately Impacted Area,"[2] who had been arrested for, convicted of, or adjudicated delinquent for an offense made eligible for expungement under the law, or who was a family member of an individual who, prior to June 25, 2019, was arrested for, convicted of, or adjudicated delinquent for an offense made eligible for expungement under the law. (*Id.* ¶ 48.) All employees received extensive training in the cannabis industry in order to best position themselves to succeed not only as employees, but as future entrepreneurs. (*Id.* ¶ 49.) In hiring, employing and training these individuals, Sozo expended substantial resources including a monetary investment in excess of $300,000. (*Id.* ¶ 50.) Sozo also supported social equity efforts through engagement with community groups and educational institutions serving "Disproportionately Impacted Areas," including the south side of Chicago. (*Id.* ¶ 51.)

Having structured its business to be consistent with the requirements and policy objectives of the 2019 Act, Sozo made the substantial investment of employee time and financial resources to complete the rigorous application process. (*Id.* ¶¶ 36-41.) On or before the January 2, 2020 deadline, Sozo submitted eleven total applications for the New AU Licenses in three of the seventeen geographic areas established by the 2019 Act, paying a total of $55,000 in application fees. (*Id.* ¶¶ 53-54.) The IDFPR received over 4,000 total applications for the first 75 New AU Licenses. (*Id.* ¶ 55.)

---

[2] As defined in the Act, "Disproportionately Impacted Area" refers to certain areas within Illinois that have been with higher poverty rates and that have been negatively impacted by the War on Drugs. 410 ILCS 705/1-10; *see also* Dkt. 1, ¶ 42 n.1. *See also* Disproportionate Impact Map, https://www2.illinois.gov/dceo/CannabisEquity/Pages/DisproportionateImpactedAreaMap.aspx.

<u>The IDFPR Announces Results of Initial Application Process</u>

Under the 2019 Act, the first 75 New AU Licenses were to be awarded by May 1, 2020. However, due to the COVID-19 pandemic and other factors, the results were not announced until September 3, 2020. (*Id.* ¶¶ 55-59.) On that day, the IDFPR announced that there was a tie of perfect scores in every region. (*Id.*) Specifically, twenty-one applicant groups had been given perfect scores (the "Tied Applicants"). The Tied Applicants submitted a total of 337 applications across all regions, with 8 of the 21 Tied Applicants accounting for 257 applications. (*Id.* ¶¶ 60-61.) The IDFPR planned to conduct a lottery among the Tied Applicants for the first 75 New AU Licenses. Notably, the Tied Applicants are owned by political and industry insiders. (*Id.* ¶¶ 64-65.) All of the Tied Applicants are majority-owned by Illinois residents; and at least some of the Tied Applicants qualified as "Social Equity Applicants" via the employee method. (*Id.* ¶¶ 62-63.)

Sozo was given a score of 239 out of 250 on ten of its eleven applications.[3] (*Id.* ¶ 68.) On each of those ten applications, Sozo received the 50 points as a "Social Equity Applicant" qualifying under the employee method. Sozo, however, did not receive the 5 points allocated for Illinois-owned businesses or the 5 points allocated for veteran-owned businesses; and it scored 15 of 16 points for its Recall, Quarantine, and Destruction Plan. (*Id.* ¶ 69.) Yet, despite receiving approximately 95% of the available points, Sozo and other similarly well-qualified applicants were to be excluded from the lottery for the first 75 New AU Licenses. (*Id.* ¶ 70.)

The IDFPR's plan to divvy up the first 75 New AU Licenses among firms owned by political and industry insiders provoked outrage, protests, and litigation. (*Id.* ¶ 71.) This led the Governor and the IDFPR to put the lottery on hold, and look to the General Assembly to fix the process and appease the various interest groups that had raised issues with the licensing process. (*Id.* ¶¶ 71-72.)

---

[3] An inexplicable scoring error on one of Sozo's application led to a score lower than the 239 received by its other 10 applications.

<u>The Amended Act</u>

The General Assembly amended the 2019 Act in legislation that passed both houses on May 28, 2021, and was signed by Governor Pritzker on July 15, 2021 ("the 2021 Act"). (*Id.* ¶ 9; *see generally* Dkt. 1-2.[4]) The 2021 Act provides for three separate lotteries, which will award the first 185 New AU Licenses. As an initial matter, the 2021 Act provides that the "Tied Applicant Lottery" for the first 75 New AU Licenses can now go forward; that lottery is now scheduled for August 19, 2021. (*Id.* ¶¶ 10-11, 74-77.) In exchange for preserving the Tied Applicant Lottery, the 2021 Act provided for two other lotteries to award an additional 110 New AU Licenses based on the applications that companies had previously submitted. (*Id.*)

The General Assembly, however, materially changed the rules under which those existing applications would be evaluated by creating a distinction among Social Equity Applicants that did not exist under the 2019 Act. (*Id.* ¶ 75-77; Dkt 1-2 at 108-128.) Specifically, the 2021 Act created a sub-category of Social Equity Applicants called "Social Equity Justice Involved Applicants," which consisted only of applicants who qualified for social equity status under the "ownership method," and reserved one lottery (for 55 New AU Licenses) for just those applicants who scored over 85% on their applications and qualified for this new status. (*Id.*) This "Social Equity Justice Involved Lottery" is scheduled to take place on August 5, 2021. (*Id.*) The remaining 55 New AU Licenses will be awarded via a "Qualifying Applicant Lottery," among all applicants who received over 85% of the available points; this lottery is scheduled to take place on July 29, 2021. (*Id;* Dkt. 1-2, at 108-119.)

## **ARGUMENT**

"As a threshold matter, a party seeking a preliminary injunction must demonstrate (1) some likelihood of succeeding on the merits, and (2) that it has no adequate remedy at law and will suffer

---

[4] Exhibit B to Plaintiff's Verified Complaint (Dkt. 1-2) is a copy of the 2021 Act, which shows the changes made from the 2019 Act.

irreparable harm if preliminary relief is denied. . . . " *Abbott Laboratories v. Mead Johnson & Co.*, 971 F.2d 6, 11 (7th Cir. 1992) (citations and quotations omitted); *Cassell v. Snyders*, 990 F.3d 539, 544–45 (7th Cir. 2021) (quoting same). "If these threshold factors are met, the court proceeds to a balancing phase . . . where it must then consider: (3) the irreparable harm the non-moving party will suffer if preliminary relief is granted, balancing that harm against the irreparable harm to the moving party if relief is denied; and (4) the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell*, 990 F.3d at 545. "The higher the likelihood of success on the merits, the less decisively the balance of harms needs to tilt in the moving party's favor." *Planned Parenthood of In. v. Adams,* 937 F.3d 973, 980 (7th Cir. 2019). As set forth in detail below, Sozo meets each of these four factors and thus is entitled to a preliminary injunction barring Defendants from implementing the constitutionally defective licensing process outlined in the 2021 Act.

## I.      Sozo Is Likely to Succeed on its Constitutional Claims.

Sozo must first show that it is likely to succeed on the merits of its constitutional claims. This standard requires a "strong" showing of likelihood of success on the merits, but does not require complete proof of success or "proof by a preponderance." *Tully v. Okeson*, 977 F.3d 608, 613 (7th Cir. 2020). Instead, "it normally includes a demonstration of how the applicant proposes to prove the key elements of its case." *Id.* (citation and quotations omitted). Here, the 2021 Act violates the Commerce Clause of the U.S. Constitution (or, more precisely "the dormant commerce clause,"), and also impinges on Sozo's rights to due process and equal protection under both the U.S. and Illinois Constitutions. As demonstrated in detail below, Sozo is likely to succeed on each of these claims, any one of which could support the issuance of a preliminary injunction.

## A.      Sozo is Likely to Succeed on Its Commerce Clause Claim.

Pursuant to the Commerce Clause of the United States Constitution, Congress is empowered "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3. The Supreme

Court has long held "that [the Commerce Clause] also prohibits state laws that unduly restrict interstate commerce." *Tennessee Wine & Spirits Retailers Ass'n v. Thomas*, 139 S.Ct. 2449, 2459 (2019). This doctrine is sometimes referred to as the "negative" aspect of the Commerce Clause (or the dormant commerce clause). Under this doctrine, if a state treats in-state economic interests differently than out-of-state economic interests in a way that favors the in-state economic interests, it is considered discriminatory. "[D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the later." *Oregon Waste Sys., Inc. v. Dep't. of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994).

Thus, state laws that discriminate against citizens of other states will almost always be considered invalid under the United States Constitution: "If a restriction on commerce is discriminatory, it is virtually per se invalid." *Oregon Waste Sys.,*, 511 U.S. at 99; *see also, e.g., Fulton Corp. v. Faulkner*, 516 U.S. 325, 331 (1996); *Tennessee Wine & Spirits Retailers,* 139 S.Ct. at 2461 (2019) ("[I]f a state law discriminates against out-of-state goods or nonresident actors, the law can be sustained only on a showing that it is narrowly tailored to advance a legitimate local purpose."). A law may run afoul of the dormant commerce clause when it is facially discriminatory (*i.e.,* when it discriminates against out-of-state interests by its plain terms) or when it has a discriminatory purpose or effect. *See Toigo v. Dept. of Health and Senior Services*, Case No. 2:20-cv-04243-NKL, at 5 (W.D. Mo. June 21, 2021) (citing cases) (Dkt. 1-3). These discriminatory laws are subject to strict scrutiny. In particular, state laws that discriminate against interstate commerce on their face "invoke[] the strictest scrutiny of any purported legitimate local purpose and of the absence of nondiscriminatory alternatives." *Hughes v. Oklahoma*, 441 U.S. 322, 337 (1979); *see also Camps Newfoundland/Owatonna, Inc. v. Town of Harrison*, Me., 520 U.S. 564, 581 (1997) (explaining that strict scrutiny of a law that facially discriminates against non-residents "is an extremely difficult burden, so heavy that facial discrimination by itself may be a fatal defect" (quotation marks omitted)). The 2021 Act is exactly the sort of statute which this negative aspect of

the Commerce Clause prohibits. The 2021 Act discriminates against non-Illinois residents and entities owned by non-Illinois residents both on its face, and by virtue of its discriminatory purpose and discriminatory effects. This is so in at least two ways.

*First*, the 2021 Act discriminates on its face against non-Illinois residents by virtue of its provision providing "5 points" in the application scoring system to applicants that are majority-owned by Illinois residents. (Dkt. 1-2, at 103-04; 705 ILCS 15-30(c)(8).) Further, the practical effect of this provision was to ensure that ***only*** those applicants who received the 5 Illinois owner points were eligible to receive the first 75 New AU Licenses, and that applicants owned by non-Illinois residents had no chance of receiving those licenses. (Dkt. 1, ¶¶ 62, 67, 84.) In addition, in the Qualifying Applicant Lottery (currently scheduled for July 29, 2021), applicants with out-of-state ownership (like Sozo) will be forced to compete against applicants who qualified for that lottery due to their receipt of the Illinois owner points. Plainly, there is no legitimate local purpose for this discrimination against applicants owned by out-of-state residents. Its purpose – either by design or effect – is to benefit Illinois residents over non-residents. This is a "fatal defect," and, on this basis alone, the 2021 Act is unconstitutional.

*Second,* the 2021 Act also violates the Commerce Clause by creating a special lottery for "Social Equity Justice Involved Applicants" – a category that substantially favors applicants that are majority-owned by Illinois residents. Specifically, the 2021 Act defines "Social Equity Justice Involved Applicants" as limited to those applicants that qualified for social equity status by utilizing the so-called "ownership method" of qualification, meaning that "an applicant with at least 51% ownership and control by one or more individuals who have resided for at least 5 of the preceding 10 years in a Disproportionately Impacted Area" or "an applicant with at least 51% ownership and control by one or more individuals who: (i) have been arrested for, convicted of, or adjudicated delinquent for any offense that is eligible for expungement under this Act; or (ii) is a member of an impacted family."

9

(Dkt. 1-2, at 28-29; 410 ILCS 130/115; 410 ILCS 705/15-35.10) Essentially, this means that a "Social Equity Justice Equity Involved Applicant" must live or have lived in certain areas within Illinois or been arrested for, convicted of, or adjudicated delinquent for a cannabis offense in Illinois. Moreover, to the extent the text of the 2021 Act leaves any doubt as to its intent and purpose, the statements by the sponsors and advocates for the 2021 Act that the purpose and intended effect of the "Social Justice Equity Involved Lottery" was to benefit residents of specific communities within Illinois. *See* Ex. A, *Pot equity bill paving way for 185 new dispensaries heads for Pritzker's desk*, Chicago Sun Times 5/28/21. Thus, this provision too is "per se invalid." *Oregon Waste Sys.*, 511 U.S. at 99.

Defendants will surely point to the 2021 Act's social equity objectives as a justification for the preference for Illinois residents created by the "Social Justice Equity Involved Lottery." However, in evaluating laws that discriminate against out-of-state actors, Defendants must show a legitimate local purpose <u>and</u> the absence of nondiscriminatory alternatives. *See Hughes,* 441 U.S. at 337. Here, to the extent the 2021 Act's purpose is to benefit communities negatively impacted by the War on Drugs and the prior criminalization of cannabis use, the 2019 Act demonstrates that there are alternatives to achieve those objectives that do not blatantly favor Illinois residents like the "Social Equity Justice Involved Lottery" created by the 2021 Act. Indeed, the 2019 Act allowed companies to qualify as a "Social Equity Applicant" not merely by virtue of where their owners live (or had lived) but by employing residents of impacted communities. Yet, unlike the 2021 Act, the 2019 Act did not draw distinctions among "Social Equity Applicants" based on how they qualified for that status. Specifically, the 2019 Act treated all "Social Equity Applicants" (including those with out-of-state ownership) the same thereby clearly demonstrating that there is a nondiscriminatory alternative that benefits impacted communities without the unconstitutional bias in favor of Illinois residents imbedded in the 2021 Act's "Social Equity Justice Involved Lottery."

In sum, the combined effect of the 2021 Act's Illinois owner preference and the "Social Equity

Justice Involved Lottery" is that applicants with out-of-state ownership (like Sozo) have no chance to obtain 130 of the first 185 New AU Licenses. Within the last year, at least three federal district courts have granted preliminary injunctive relief to plaintiffs challenging residency preferences in the context of state cannabis licensing laws, finding, *inter alia*, that such preferences likely violated the dormant Commerce Clause. In *Lowe v. City of Detroit*, Case No. 21-CV-10709, 2021 WL 2471476, *9 (E.D. Mich. June 17, 2021)., the court found that an ordinance giving preference to applicants for a cannabis license to have lived in Detroit for 10 to 15 years likely violated the Commerce Clause. Similarly, in *NPG, LLC v. City of Portland, Maine*, Case No. 2:20-cv-00208-NT, 2020 WL 4741913, *9 (D. Me. Aug. 14, 2020), the court found that an application system awarding points to residents of the city of Portland giving preferential treatment to Maine residents and those who had previously had business licenses in Maine was likely facially unconstitutional and lacked a rational relationship to the purposes of the law. And, most recently, in *Toigo v. Dept. of Health and Senior Services*, Case No. 2:20-cv-04243-NKL (W.D. Mo. June 21, 2021) (Dkt. 1-3), the court found that a residency requirement preferring owners who had lived in the state for at least a year was likely to be found facially unconstitutional and lacking in a legitimate purpose that could not be adequately served by a reasonable, non-discriminatory alternative.

Like these courts, and for the reasons stated above, this Court should find that Sozo is likely to succeed in its claims that the 2021 Act's discrimination against applicants owned by out-of-state residents – as embodied in both the Illinois owner points (410 ILCS 705/15-30(8)) and the Social Equity Justice Involved Lottery (410 ILCS 705/15-35.10) – violates the Commerce Clause.

### B. Sozo Is Likely to Succeed on its Fourteenth Amendment Due Process Claim.

Sozo is also likely to succeed on its due process claim under the Fourteenth Amendment of the U.S. Constitution. This is so because the 2021 Act fundamentally changes the rules regarding how applications would be evaluated *after* the applications were submitted but *before* the licenses are awarded

by creating a distinction between Social Equity Applicants that did not exist under the 2019 Act. Specifically, as discussed earlier, the 2019 Act allowed for applicants to be considered a Social Equity Applicant by virtue of either the "ownership method" or the "employee method." (Dkt. 1, ¶¶ 42-46.) Further, the 2019 Act did not draw any distinction among Social Equity Applicants based on how they qualified for that status; and, during the application process, the IDFPR confirmed that Social Equity Applicants would be treated the same regardless of how they qualified. (*Id.*)

Sozo relied on the 2019 Act and the IDFPR's guidance in structuring its Illinois business and in making the business decision to apply for licensure in Illinois. (*Id.* ¶¶ 47-54.) Among other things, Sozo hired and trained employees from communities disproportionately impacted by the War on Drugs. (*Id.*) In hiring, employing, and training these individuals, Sozo expended substantial resources including a monetary investment in excess of $300,000. (*Id.* ¶ 50.) Sozo also supported social equity efforts through engagement with community groups and educational institutions serving "Disproportionately Impacted Areas," including the south side of Chicago. (*Id.* ¶ 51.) Based on the belief that these efforts would give it a reasonable chance to qualify for a license, Sozo submitted eleven total applications for the New AU Licenses, paying a total of $55,000 in application fees. (*Id.* ¶¶ 53-54.)

After Sozo's applications were submitted, however, the General Assembly passed the 2021 Act which provided that those applications (which were prepared in reliance on the 2019 Act) would also be used to award an additional 110 New AU Licenses under different rules wherein 55 Licenses would be reserved solely for those applicants who qualified for social equity status under the "ownership method." There was no opportunity for Sozo or other applicants to amend their prior applications or submit new applications in light of these new rules. In essence, Illinois changed the rules of the game in the fourth quarter. Moreover, while penalizing some applicants who qualified for social equity status under the employee method, the 2021 Act did not apply that distinction to the

group of "Tied Applicants" – a group of 21 companies largely owned by political and industry insiders who will have exclusive access to the 75 of the New AU Licenses to be awarded. This is fundamentally unfair to Sozo, and violates its rights to substantive and procedural due process under the Fourteenth Amendment to U.S. Constitution.

The Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law. . ." U.S. Const. Amend. 14, § 1. A procedural due process claim requires Plaintiff to establish "(1) a cognizable liberty or property interest; (2) the deprivation of that interest by some form of state action; and (3) the failure to employ constitutionally adequate procedures." *Dietchweiler by Dietchweiler v. Luca*s, 827 F.3d 622, 627 (7th Cir. 2016). Substantive due process is a concept that has developed to protect against certain state actions regardless of the fairness of any procedural protections the plaintiff was afforded. *Cty. of Sacramento v. Lewis,* 523 U.S. 833, 840 (1998); *Daniels v. Williams*, 474 U.S. 327, 33 (1986). It arises when state action infringes upon a fundamental liberty interest, *Reno v. Flores*, 507 U.S. 292, 302 (1993), or when state action is "arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare," *Euclid v. Ambler Realty Co.,* 272 U.S. 365, 395 (1926).

A threshold question for both procedural and substantive due process claims is the existence of a property right protectable by the Fourteenth Amendment. Constitutionally protected liberty and property interests "are normally not created by the Constitution. Rather, they are created and their dimensions defined by an independent source such as state statutes or rules entitling the citizen to certain benefits." *Goss v. Lopez*, 419 U.S. 565, 572–73. Here, the property right was created by the 2019 Act – specifically, the 2019 Act set forth very specific criteria for how applications for the New AU Licenses would be evaluated. 410 ILCS 705/1-10. In particular, the 2019 Act provided that applicants could qualify as "Social Equity Applicants" under the ownership method or employee method, and did not allow for distinctions to be drawn among such applications (as confirmed by the

13

IDFPR during the application process.  (Dkt.1, ¶ 42; 410 ILCS 705/1-10.)  **The Illinois legislature and IDFPR treated the two methods *identically* for all purposes as part of the application and review process under the 2019 Act.**  Sozo relied on the 2019 Act in structuring its business and in preparing and submitting its applications, all at a substantial cost.  (Dkt. 1, ¶¶  47-54.)  Given this investment and the opportunity it provides to obtain a license in the emerging lucrative Illinois cannabis market (*Id.* ¶¶ 24-25**)**, it is clear that Sozo's applications are a valuable asset as they secure the right to be part of the lottery process, and by virtue of the 2019 Act, that right includes being treated equally to all other Social Equity Applicants.  Indeed, another Judge in his district has held that an applicant in Illinois' medical cannabis licensing process had alleged a protectable property interest under the Fourteenth Amendment in its application for a medical cannabis license.  *See Quick v. Illinois Dept. of Financial and Professional Regulation*, 468 F.Supp.3d 1001, 1007 (N.D. Ill. 2020).  So too here; Sozo's application provides it with a protectable property interest of a seat at the lottery table that is equal to that of all Social Equity Applicants.

Having established a protectable property interest, the question turns to whether the 2021 Act deprives Sozo of that property interest in violation of the procedural and substantive components of the due process clause.  *First*, with regard to procedural due process, it cannot be disputed that the 2021 Act took away Sozo's equal seat at the lottery table by creating the special "Social Equity Justice Involved Lottery" for 55 of the New AU Licenses that excluded Sozo.  Further, it cannot be disputed that Illinois did this by evaluating Sozo's application that was submitted pursuant to the 2019 Act without any opportunity to amend those applications (or submit new ones) in light of the new system created by the 2021 Act.  Put simply, Sozo was afforded no procedural due process.  *See Briscoe v. Kusperi,* 435 F. 2d 1046, 1052-56 (7th Cir. 1971) (holding that city board of elections violated aldermanic candidate's right to due process by evaluating nominating petitions under rules different than those under which petitions were submitted).

14

*Second,* with regard to substantive due process, there can be no doubt that evaluating Sozo's applications under an entirely different standard is fundamentally unfair. Such due process violations of property rights are reviewed on a rational basis, which requires that the law be rationally related to a legitimate government interest. *Hughes v. Jones,* 40 F.Supp.3d 969, 987 (N.D. Ill. 2014). Although this is a deferential standard, Defendants cannot meet it here as the change in the law to favor Social Equity Justice Involved Applicants based solely on where they are from or their past history with cannabis offenses as opposed to their actual commitment to help impacted communities is not rational. Specifically, applicants (like Sozo) who qualify for social equity status under the "employee method" are required to provide real, tangible benefits to impacted communities by employing members of those communities. (Dkt. 1, ¶¶ 42, 94; 410 ILCS 705/1-10; Dkt. 1-2, Ex. B at 61-62.) This impact is demonstrated by Sozo's investment in hiring and training such employees and its community engagement efforts. (Dkt. 1, ¶¶ 447-54, 92, 94-95.) These benefits flow directly to the ordinary working people who live there and not just to the more affluent and politically connected members of those communities who might be able to acquire majority ownership interests in applicant entities. (*Id.*) By contrast, the qualification criteria for the ownership method relies solely on the identity of the ownership group and merely assumes that some benefit will trickle down to the community as a whole without actually requiring any specific actions that advance the purported social equity focus of the Act. (*Id.* ¶ 94.) Put simply, there is no rational basis for the 2021 Act's new distinction between Social Justice Applicants that can justify the fundamental unfairness of changing the rules for how applications will be evaluated *after* they have been submitted.

For all of the above reasons, Sozo has demonstrated a likelihood of success on its claims under the Due Process Clause of the Fourteenth Amendment.

### C. Sozo Is Likely to Succeed on Its Equal Protection Claim.

The Fourteenth Amendment to the United States Constitution provides that no state shall

"deny any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. 14, §
1. The equal protection clause "protects individuals against intentional, arbitrary discrimination by
government officials." *Hayden ex rel. A.H. v. Greensburg Cmty. Sch. Corp.*, 743 F.3d 569, 577 (7th Cir.
2014); *see also Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). The 2021 Act favors one class
of Social Equity Applicants (those who qualified under the ownership method) over another (those –
like Sozo – who qualified under the employee method). This effectively treats Social Equity
Applicants differently based on where live (or previously lived) and whether they have been arrested
or convicted for a cannabis offense. Such a distinction runs afoul of the Equal Protection Clause if
"there is no rational basis for the difference in treatment." *Village of Willowbrook*, 528 U.S. at 564.
Here, for the same reasons discussed in detail above with regard to Sozo's substantive due process
claim, there is no rational basis for the 2021 Act's preference for Social Justice Applicants that qualified
under the ownership method over those that qualified under the employee method. Thus, Sozo is
likely to succeed on this claim as well.

### D. Sozo is Likely to Succeed on Its State Constitution Claims.

Article 1, Section 2 of the Constitution of the State of Illinois provides that: "No person shall
be deprived of life, liberty or property without due process of law nor be denied the equal protection
of the laws." Ill. Const. art. 1, § 2. In Illinois, "[e]qual protection challenges based on the Illinois
Constitution are evaluated under the same standards as the federal Constitution." *Smith on Behalf of
Smith v. Severn*, 129 F.3d 419, 424 n. 3 (7th Cir. 1997); *see also Jarabe v. Indus. Comm'n*, 172 Ill. 2d 345,
348, 666 N.E.2d 1, 3(1996). Similarly, the "Illinois Supreme Court has made clear that the Illinois due
process guarantee is not necessarily co-extensive with the federal due process protections . . . and we
have not found [] any guidance which lead us to believe that due process challenges based on the
Illinois Constitution are evaluated any differently than challenges that are based on the federal
Constitution." *Id.* Because both the due process and equal protection clauses of the Illinois

Constitution are evaluated in the same way as those of the U.S. Constitution, it is likely that Sozo will succeed on its claim that the 2021 Act violates the Illinois Constitution for the same reasons set forth above regarding its claims under the Fourteenth Amendment of the United States Constitution.

**II.  Plaintiff Has No Adequate Remedy at Law and Will Suffer Irreparable Harm if a Preliminary Injunction is Denied.**

To obtain a preliminary injunction, a party must also show that it has no adequate remedy at law and will suffer irreparable harm if the requested preliminary injunction is not entered. Here, Sozo cannot be adequately compensated by money damages if the preliminary injunction is not issued; without the preliminary injunction, Sozo will suffer irreparable harm from being improperly excluded from or disadvantaged in the lottery and prevented from establishing its business while others are allowed to do so.

"Irreparable harm" is "harm that 'cannot be repaired' and for which money compensation is inadequate." *Orr v. Shicker*, 953 F.3d 490, 502 (7th Cir. 2020). This is not an absolute requirement. Instead, the moving party need show only that it "will *likely* suffer irreparable harm absent obtaining preliminary injunctive relief." *Orr*, 953 F.3d at 502 (emphasis in original). Constitutional wrongs – such as those at issue here – often form the basis of irreparable harms when such wrongs "involve some continuing or future injury which cannot be compensated by monetary damages alone." *Hamlyn v. Rock Island Cty. Metro. Mass Transit Dist.*, 960 F. Supp. 160, 163 (C.D. Ill. 1997); "[A] number of courts have held that equal protection claims under the Fourteenth Amendment create irreparable injury" in cases that "involve some harm greater than mere monetary loss or involve a situation in which the amount of the loss cannot easily be ascertained." *Id*; *see also Indiana Fine Wine & Spirits LLC v. Cook*, 459 F. Supp. 3d 1157, 1169-70 (S.D. Ind. 2020) ("The existence of a continuing constitutional violation constitutes proof of an irreparable harm, and its remedy certainly would serve the public interest, and this principle of law applies to violations of the Commerce Clause.")   Further, courts have also found

17

irreparable harm where a plaintiff cannot pursue monetary damages against state actors due to the Eleventh Amendment. *See, e.g.*, *Indiana Fine Wine,* 459 F. Supp. 3d at 1169-70. Also, an injury to goodwill "can constitute irreparable harm for which a plaintiff has no adequate remedy at law." *Meridian Mut. Ins. Co. v. Meridian Ins. Grp., Inc.*, 128 F.3d 1111, 1120 (7th Cir. 1997). Permanent loss of customers and business likewise can constitute an irreparable injury. *Lineback v. Chauffeurs, Teamsters, & Helpers Loc. Union No. 414*, 513 F. Supp. 2d 988, 998 (N.D. Ind. 2007).

Here, Sozo can clearly show that it will likely suffer irreparable harm absent obtaining preliminary injunctive relief. As an initial matter, Sozo has shown the existence of a prospective constitutional violation, which "constitutes proof of irreparable harm." *Indian Fine Wine,* 459 F. Supp. 3d at 1169-70. Further, monetary damages are not even available as a remedy due to the Eleventh Amendment. *See Indiana Fine Wine,* 459 F. Supp. 3d at 1169-70; *Toigo*, Case No. 2:20-cv-04243-NKL, at 11 (W.D. Mo. June 21, 2021) (Dkt. 1-3). Moreover, even if monetary damages were theoretically available, Sozo would still have no adequate remedy at law. The 2021 Act, through its unconstitutional application, denies many well-qualified applicants like Sozo from fully participating in the system to obtain one of the limited number of available licenses. The Act also provides residents of Illinois a decided advantage in obtaining these licenses. Thus, Sozo will suffer an irreparable injury "by being significantly disadvantaged in applying for a recreational marijuana retail license" and by being excluded entirely from any chance at 130 of the first 185 New AU Licenses. *See Lowe*, 2021 WL 2471476, at *10.

Further, in the nascent recreational cannabis market, in the absence of the requested preliminary injunction, the Defendants' issuance of licenses by its unconstitutional application of the amended Act will deny Sozo a full and fair opportunity to a license for which it is certainly qualified. This inflicts upon Sozo a substantial competitive injury because the delay arising from denying Sozo— and others similarly situated—a full and fair opportunity to a license for which it is certainly qualified

will prevent Sozo from entering the market during the potentially protracted period over which its claims in this case are litigated. Such a delay prevents Sozo from entering the market and competing with the first rounds of licensees, who are left to further cement their significant advantage in early development of customer and business relationships and goodwill. Monetary damages for this harm are difficult, if not impossible to accurately quantify and may be speculative at best. And such monetary damages, even if they could be determined, cannot adequately compensate Sozo for the injury from which it reasonably cannot recover, even after it prevails on the merits after full litigation of its claims. *See, e.g.*, *NPG*, 2020 WL 4741913 at *11.

Thus, Sozo has made the showing of irreparable harm required to satisfy the second requirement for preliminary injunctive relief.

### III. The Harm Suffered by Sozo if the Preliminary Injunction is Denied Will Outweigh Any Potential Harm to Defendants.

Once a party has met the first two requirements for entry of a preliminary injunction—i.e., that it is likely to succeed on the merits of its claims and that it will suffer irreparable injury without injunctive relief—the analysis turns to the final two balancing requirements of the test. The first of these requires a court "to balance the harm the injunction would impose on the defendant against the injury the plaintiff would suffer without the injunction." *Boucher v. Sch. Bd. of Sch. Dist. of Greenfield*, 134 F.3d 821, 824 (7th Cir. 1998). "In this balancing, each party's potential injury must be adjusted for the probability that that party will prevail on the merits." *Id.* For example, "the less likely it is the plaintiff will prevail on the merits, the greater the harm the plaintiff would have to suffer to justify an injunction." *Id.* Conversely, where as here Sozo has shown a likelihood of success on its constitutional claims, a lesser amount of harm must be shown. *See Indiana Fine Wine*, 459 F. Supp. 3d at 1170-71.

Here, as discussed above, Sozo has shown that it will suffer irreparable harm in the absence of a preliminary injunctive. By contrast, there is no "harm [to a state agency] when it is prevented

from enforcing an unconstitutional statute." *Id.* (quoting *Joelner v. Vill. of Wash. Park,* 378 F.3d 613, 620 (7th Cir. 2004)); *see also Toigo*, at 13 (Dkt. 1-3) (holding that Missouri agency "cannot be irreparably harmed by inability to enforce" unconstitutional residency preference in cannabis licensing law). Thus, this factor too favors granting Sozo preliminary injunctive relief.

**IV.  A Preliminary Injunction Will Serve the Public Interest.**

Finally, the Court must consider "the public interest, meaning the consequences of granting or denying the injunction to non-parties." *Cassell*, 990 F.3d at 545. When it comes to a constitutional right, "Illinois taxpayers have a vested interest in ensuring that the constitutional rights of its citizens are protected." *Foster v. Ghosh*, 4 F. Supp. 3d 974, 984 (N.D. Ill. 2013). In cases (like this one) involving constitutional challenges, "if a moving party establishes a likelihood of success on the merits, the balance of harms normally favors granting preliminary injunctive relief because the public interest is not harmed by preliminarily enjoining the enforcement of a statute that is probably unconstitutional." *Am. C.L. Union of Illinois v. Alvarez*, 679 F.3d 583, 589–90 (7th Cir. 2012).

The public is served by enjoining a statute that is likely unconstitutional. *See, e.g.*, Joelner, 378 F.3d at 620 ("surely, upholding constitutional rights serves the public interest"); *Toigo*, at 14 (Dkt. 1-3) ("The public interest is best served by the protection of Toigo's constitutional rights to fully participate in the medical marijuana business in Missouri on the same footing as a Missouri resident, a right that is likely violated by the State's durational residency requirement."); *Lowe*, 2021 WL 2471476, at *10 ('the public interest is best served by enjoining the enforcement of an ordinance that is likely unconstitutional"). Further, the public interest is served by preserving the status quo. The constitutional issues raised here should be resolved now, before additional sums are expended by parties whose licenses may be improvidently granted through lotteries based on unconstitutional criteria. *See NPG*, 2020 WL 4741913 at *12. Indeed, any harm from any additional delay in issuing these licenses (especially in light of government's own delay of over a year) will be outweighed by the

benefits of ensuring that Illinois only moves forward with a cannabis licensing regime that complies with the U.S. and Illinois Constitutions. Thus, this factor too favors preliminary injunctive relief.

### CONCLUSION

For the foregoing reasons, Sozo respectfully requests that the Court grant its motion for a temporary restraining and preliminary injunction barring Defendants from proceeding with process for the issuance of the 185 New AU Licenses outlined in the 2021 Act.

Respectfully Submitted,

**HANSEN REYNOLDS LLC**

/s/     Alan Nicgorski

Alan Nicgorski (State Bar No. 6243574)
Joseph Jacobi (State Bar No. 6273967)
Sarah Troupis Ferguson (pro hac vice pending)
150 S. Wacker Dr. 24th Floor
Chicago, IL 60606
Phone: 312.265.2253
Email: anicgorski@hansenreynolds.com
        jjacobi@hansenreynolds.com
        sferguson@hansenreynolds.com

*Attorneys for Plaintiff Sozo Illinois, Inc.*